[Cite as *State v. Hawkins*, 2023-Ohio-1272.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO

    Plaintiff-Appellee

-vs-

MATTHEW HAWKINS

    Defendant-Appellant

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. John W. Wise, J.
Hon. Craig R. Baldwin, J.

Case No. 2022CA00079

O P I N I O N

CHARACTER OF PROCEEDINGS:      Appeal from the Stark County Court of Common Pleas, Case No. 2021-CR-0869

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      April 19, 2023

APPEARANCES:

For Plaintiff-Appellee

KYLE STONE
Prosecuting Attorney
Stark County, Ohio

LISA A. NEMES
Appellate Division Chief
Assistant Prosecuting Attorney
110 Central Plaza, South – Suite #510
Canton, Ohio 44702-1413

For Defendant-Appellant

AARON KOVALCHIK
116 Cleveland Avenue, N.W.
Suite #808
Canton, Ohio 44702

*Hoffman, P.J.*

{¶1}  Defendant-appellant Matthew Hawkins appeals the judgment entered by the Stark County Common Pleas Court convicting him following jury trial of gross sexual imposition (R.C. 2907.05(A)(4)(C)(2)) and sentencing him to forty-eight months incarceration.  Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}  The victim in the instant case, who is Appellant's daughter, was born in 2004.  In 2012, when the victim was eight years old, she lived with her mother, Appellant, and her brother at her grandmother's house in Louisville, Ohio.  While living in her grandmother's house, the victim was in her bedroom asleep when Appellant pulled the covers off her feet and touched her feet with his penis.

{¶3}  The family moved to their own home in 2013.  Appellant would regularly come to the victim's bedroom when he got up for work, while the rest of the family slept. The victim could hear the sound of his footsteps approaching her room, and would try to pretend she was asleep.  In addition to putting his penis on the victim's feet, Appellant would touch the victim's hands and arms with his penis.  Sometimes he would mumble and ask the victim if she liked it, or make other comments she could not understand. Appellant ejaculated on the victim's face or lips.  Appellant also touched the victim's vagina with his fingers.  Appellant usually touched the victim's vaginal area under her clothing, but if she wore more restrictive clothing, he would touch her on top of her clothing.  The victim started wearing a "onesie" to bed in order to make it difficult for Appellant to touch her under her clothing.

{¶4}  The victim recounted one specific occasion when she was twelve years old. The victim was sleeping in a recliner in the living room because she was sick.  Appellant

came into the living room early in the morning, before the victim's mother woke up, and touched her feet with his penis. He moved his penis over her body including her hands, touched her vagina with his finger, and eventually ejaculated on her mouth.

{¶5} In 2016, the victim told her mother Appellant had been coming into her room at night and touching her feet with his hands. The victim's mother was alarmed because she knew Appellant had a sexual foot fetish. Further, the mother had not told the victim about Appellant's foot fetish, so the mother realized the victim would have no way of knowing this information unless she had experienced it herself. The mother confronted Appellant, who punched the door and told her she was crazy. The victim's mother did not report the incident to the police right away because the victim asked her not to report the conduct. The victim was confused and scared about what would happen if they reported Appellant's conduct.

{¶6} In August of 2017, the victim's mother filed for divorce from Appellant. The mother also made a report to Louisville police. Children's Services was advised of the report, but closed the investigation because the allegations were not necessarily sexual in nature. Police interviewed Appellant, who speculated he might have brushed against the victim's feet while shutting a window or turning off the air conditioner. Appellant claimed the allegations were fabricated to help the victim's mother with custody and child support issues in the divorce.

{¶7} In 2019, the victim disclosed the full nature of Appellant's conduct to her mother. The victim, who was then fifteen years old, realized she needed to talk with someone other than her mother. The victim started counseling with Megan Hayward. During her first counseling session, the victim disclosed to Hayward her dad had touched

her inappropriately. Hayward reported the abuse to Children's Services. Hayward diagnosed the victim with post-traumatic stress disorder, depression, and anxiety.

{¶8} Children's Services conducted an investigation. As part of the investigation, the victim was examined by Alissa Edgein, a nurse practitioner at Akron Children's Hospital. No physical evidence was found during the examination, but Edgein did not expect to find physical evidence because of the amount of time which had passed, and the ability of the vagina to heal.

{¶9} Appellant was again interviewed by the Louisville Police. Appellant admitted he has a sexual foot fetish, but continued to deny the allegations. Appellant claimed the victim might have dreamed or imagined the incidents.

{¶10} Appellant was indicted by the Stark County Grand Jury with one count of gross sexual imposition. The case proceeded to jury trial in the Stark County Common Pleas Court.

{¶11} Appellant testified at trial. He admitted to having a sexual foot fetish, but denied anything of a sexual nature occurred with the victim. He testified his ex-wife, the victim's mother, was putting the ideas in the victim's head in order to help her with child custody issues.

{¶12} The jury found Appellant guilty. The trial court convicted Appellant upon the jury's verdict and sentenced him to forty-eight months incarceration. It is from the May 11, 2022 judgment of the trial court Appellant prosecutes his appeal, assigning as error:

APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶13}** Appellant argues his conviction was against the manifest weight of the evidence because there was no physical, scientific or eyewitness evidence to corroborate the victim's allegations, the testimony of the victim and her mother was not credible and was fabricated to help his ex-wife get the upper hand in the divorce, and he has consistently denied the allegations.

**{¶14}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, *quoting State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983). We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

**{¶15}** Appellant was convicted of gross sexual imposition in violation of R.C. 2907.05(A)(4):

> (A) No person shall have sexual contact with another, not the spouse
> of the offender; cause another, not the spouse of the offender, to have

sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

**{¶16}** Officer Cory Kidwell of the Louisville Police Department testified he would not expect any DNA evidence to exist because of the time which passed between the sexual abuse and the investigation. Similarly, Alissa Edgein, the nurse practitioner who examined the victim, testified it is not uncommon to find no physical evidence to support allegations of sexual abuse because the vagina heals quickly, and three years had passed between the last incident of abuse and the examination.

**{¶17}** The jury was in a better position than this court to judge the credibility of the victim, the victim's mother, and Appellant. The jury heard Appellant's explanation for why he believed the victim and her mother were lying in order to give his ex-wife the upper hand in the divorce and custody proceedings, and chose to believe the testimony of the victim and the victim's mother. We find the jury did not lose its way in assessing the credibility of the witnesses in the instant case, and the conviction is not against the manifest weight of the evidence.

{¶18} The assignment of error is overruled.  The judgment of the Stark County Common Pleas Court is affirmed.


By: Hoffman, P.J.

Wise, J.  and

Baldwin, J. concur